Good morning, ladies and gentlemen. Welcome to the Ninth Circuit. We will hear the cases in the order in which they appear on the day sheet. Please be seated. They were going to stand up all day until you said, please be seated. I will remind the appellants that if they wish to reserve some time for rebuttal, they should watch the clock and do it on their own time because we won't remind you. The first case to be heard, the first four cases are submitted on the briefs. That's United States of America v. Malarkey, United States of America v. Burke, United States of America v. Eagleman, and United States of America v. Gobert are submitted on the briefs without argument. The fifth case, Surfsand Resort, LLC v. Nationwide Mutual Fire Insurance Company. Please be seated. May it please the Court. My name is Jim Guzzi. I represent Plaintiff Appellant Surfsand Resort. I'm here with Client Representative Ron Logan. I'd like to jump right in on the proof of loss issue. I believe there is a way to square the Court's decision in Wagner in a way that doesn't involve any perceived appropriations clause issues because the funds won't come from the U.S. Treasury. Counsel, forgive me for interrupting. I'm over here. Before you get to the legal question, I just need help with the facts. Okay. If I could. I'm having trouble squaring them up. I have the December 2015 flood. February 2016, there's an ER 215 that says all documents accepted. That was an email from Mr. Valencia. Correct. I don't know what he submitted, but all of what he submitted was accepted. April 1, 2016, he said that he would send the inventory and the dry logs and a request for a review. And I think he's pretty clear that he wasn't saying that anything was going to be covered. It was in the basement. But anyway, May, the proof of loss was filed, right, at least according to Mr. Butler's declaration. And then there's a partial denial in June. And then, of course, your letter. I don't have the attachment to your letter. Your letter says that the proofs of loss are attached, plural, proofs of loss. That may just be a mistake on my part. There is one signed and sworn proof of loss, and that was for the $96,000 that Nationwide concedes was paid. I don't know what Mr. Valencia submitted. The briefing from your team seems to say that something that held you up was his refusal to submit. That's correct, Your Honor. But FEMA denied something and then decided to send out an engineering response to your letter. So I can't tell what was filed. And it matters to me because Mr. Butler, no, Mr. Hickman's declaration says that a proof of loss is either that form or something that the adjuster has, he used the word, verified. And Mr. Valencia's note says, yes, he checked the box, yes, he had verified the damage. So I don't know what was submitted. That's correct, Your Honor. So I think I can help on that. Okay. So when Mr. Valencia showed up, he said, I represent the insurance company. I am their agent. He said, I am in charge of this process. So give everything to me. He represented the insurance company? Correct. He said that even though he was not employed by them? That's correct. He said, I am in charge of submitting the proof of loss. So my client's agent submitted everything, all of the damages, all of the repair documents to Mr. Valencia. Mr. Valencia made the decision on what items were to be included in the proof of loss. Okay. But we don't know what he submitted. In other words, I have a proof of loss that totals $98,000 and something, and then you've got to check for that amount. So that wasn't rejected. That was accepted. So what did they reject? And that's part of our issue here is even though what Nationwide is saying is that, hey, you submitted $98,000 in proof of loss, and that's what you got. I don't know why you're complaining. The insurance company, when they responded, they said, here's your check for $98,000, and we are going to deny the rest of your claim for anything that we believe was in it. You don't want to misquote them, do you? What's that? You don't want to misquote the record? No, absolutely not. Well, then what you just said is not what they said. That's not what they said. They denied the remainder of the claim because they felt that it was a basement under FEMA's authority. It's all right if you want to generalize it, but don't attribute it to them as a statement because what you just said was not what they stated. I didn't mean to be quoting them. I'm simply saying that they denied, based on their belief, that the bottom floor of the surf sand resort was a basement. So I don't want to take up a ton of your time. I'll just tell you both, I don't have the June 3rd letter. I can't tell what was partially denied or on what basis. I'll just leave it at that, but I can't tell what was submitted. That's correct. And that was part of our stipulated facts was that it wasn't in dispute that what they had denied and what they hadn't, and so I think that's why we didn't submit that. We had stipulated what was denied and what wasn't. Is your position that what they denied was in effect a proof of loss and therefore you met the precondition? Well, I think we have strictly complied because we followed exactly what the insurance company instructed us to do, both from Mr. Valencia and the insurance company. So when we received the denial, they said here is the appeal process. We properly appealed. Is it your case that the instructions by the insurance company and by Mr. Valencia effect an equitable estoppel on the claim that you didn't submit a proof of claim? That's correct. So Mr. Butler says you have to have a signed proof of loss or a signed and sworn adjuster's report. That's correct. Do we have the adjuster's report in the record, just following up on Judge Bea's question? No. Okay. Let me ask you this. Did Valencia at any time refuse to forward a proof of loss as to the greater amount for the basement? I think it's a little bit different from that, so I don't want to mischaracterize. Tell me what the facts in the record are on that. What he did. He received the documents, and this is from the affidavit in ER 189. He received all the documents, and then he made the decision about what documents to include in the proof of loss. Next question. Did you know, did your client know that Mr. Valencia did not forward a proof of loss as to the greater amount? Yes. When did you know that? Well, it would have been at the time of the proof of loss. Why were you justified in relying on him? Because he's the one who said, I represent the insurance company, and I am essentially the gatekeeper, and I'm not quoting there, but I am in charge of providing the documents to the insurance company. And then your outfit didn't send an additional proof of loss when he said he wouldn't put on his proof of loss. He didn't say one way or the other. He simply said, I'm the one who determines what goes in the proof of loss. So there wasn't a conversation where we said, hey, you need to do this, and he said no. He simply said, I'm in charge of this process, and he made the decision about what of the entire scope of documents he would further submit to the insurance company. And you knew at that point that he wasn't going to submit a proof of loss as to the greater amount? Well, and I think part of the issue is there were statements that accompanied that proof of loss. So what Mr. Valencia said in addition to that he was in charge of the process and decided what to bring, that the proof of loss would only act as a minimum of items that were flood damaged. And Mr. Valencia also said that any covered, omitted, or reasonable cost difference could be addressed with a claim for additional payment. Now, there's no such thing as a claim for additional payment. That term, I'm unable to find that in FEMA anywhere. In the regulations, in the authorities cited by Nationwide, and in the rules, they say that any amended proof of loss would need to be filed within 60 days of the loss. When Mr. Valencia made that statement to my client, that time had long passed. So what Mr. Valencia said, I believe, is actually consistent with the policy, which says if we reject your proof of loss in whole or in part, you may accept our denial of the claim, exercise your rights under this policy, or file an amended proof of loss as long as it is filed within 60 days of the date of the loss. Sixty days of the date of loss had long passed when Mr. Valencia made his comment. You didn't even file your proof of loss within 60 days. Correct. We did get... An extension. Correct. So that part is undisputed. So when they say exercise your rights under the policy, my understanding is they're referring to the appeal process through FEMA's regulations, which we did follow. So when Mr. Valencia made that statement to us, according to defendant's authorities, that is false, that there was not an opportunity to file an amended proof of loss at that point. There is no such thing as a claim for additional payment. And we were in charge of filing the proof of loss, not Mr. Valencia. So all of those statements we believe are false. Now, Nationwide has said repeatedly we were to be held to constructive knowledge of these, but if we were certainly held to constructive knowledge, I think there's no question that the insurance company and its representatives should be held to actual knowledge of these regulations and the policy terms. So I don't think there was any basis for my client to disbelieve what Mr. Valencia was saying at the time because it was consistent with what the policy said as well. How about your client's knowledge of what they paid in premiums? Usually what you pay in premium kind of gives you a clue as to what you're insuring, and almost always an insurance company bases its premium on what it assumes it's insuring. Now, did that give you any clues as to what was covered and what was not? Well, we continue to believe that the bottom floor of the surf sand is covered. So I don't think there's anything about the premiums that would have suggested that it's not covered. Well, what might at least raise a concern is the language which excluded the basement. Did that cause you some concern? Well, no, because factually we believe that we meet that standard, that under the facts of the case that this is not a basement. Well, one of the reasons you would exclude the basement, wouldn't that have some relation? I shouldn't say it would, I'm asking you, but it seems to me it would have some relation to how much premium you pay. If you pay when you've got a situation as you have here where you say it's not a basement, he says it is, but anyway it's the ground floor, it's the beginning of the building, and you've got a wall to keep the water from coming, which means it's at risk, then your fixed amount of the insurance company says, all right, if I'm going to insure that, you've got to pay me X dollars. None of that into this equation so far as you're concerned? It's my understanding that the basement issue is not something that FEMA will cover, period. So I don't think there's an adjustment to premiums based on whether you have any ñ there's no negotiation about whether it's a basement or not. FEMA has a rule. It's my understanding you can't pay extra to get a basement covered. They just won't do it. I'm not suggesting that you could pay extra for it, but there's a reason for the exclusion. I agree with that. The reason is because it's likely to overflow. It's the reason for that limitation is to avoid risky construction. Yes, right. And the reason that the cases that we've cited suggest that that's why you determine when you exit the building, do you step down, do you step level, or do you step up? And the reason is if water comes in and it's in a bowl, it has nowhere to go. Here, it's undisputed that there is a slight downslope on the patio when you exit the back of the surf sand resort. And the facts show that when the water came in in the flood, it did in fact recede out the patios and out the drains. Doesn't the record also show why there's a slope down? Doesn't this record show why there is a slope down? Correct. Absolutely. Absolutely. For the water to get out. And if the water went out and if it sloped at the exit, then it's not a basement, at least according to the FEMA regulations. I would like to get back on the proof of loss issue. And I know that this Court has struggled with the Appropriations Clause issues. So in Wagner, they cited a standard for estoppel. In Flick, they felt compelled to restrict that holding based on the Supreme Court's decision in Richmond. Now, the first test in Wagner was affirmative conduct going beyond mere negligence. Now, the reasoning in Richmond and pretty much all of the cases cited by the defense suggests that the reason there are limitations is because of the Appropriations Clause and because funds are coming from the U.S. Treasury. And that's not necessarily the case. The CFRs state that if litigation is grounded in actions by the company, meaning insurance company, that are significantly outside the scope of the arrangement and or involve issues of insurer's agent negligence, then the FEMA Office of Chief Counsel can find that the litigation is significantly outside of the arrangement. And under circumstances, they can, that any award or judgment for damages and costs to defend will not be recognized under Article III as a reimbursable loss, cost, expense, or reimbursement. And that's 44 CFR Part 62 Appendix A, Article III, Subsection D4. In my view, if we meet that first standard in Wagner, that we have affirmative conduct going beyond mere negligence, then there is a process where FEMA is not going to reimburse the insurance company because they acted outside of the arrangement with FEMA and or there was insurer or agent negligence. So what's the affirmative conduct going beyond mere negligence? Mr. Valencia made several statements that were contrary to FEMA's regulations, that he was responsible and would be in charge of submitting the proof of loss, according to defendant's authorities and FEMA's regulations. That is not correct. That he actually took control of the process. So this is not merely an allegation or a representation that my client relied on. This was affirmative conduct that he took control of. That the proof of loss would only act as a minimum items that were flood damaged. And finally, that any covered, omitted, or reasonable cost difference could be addressed with a claim for additional payment. All of those statements are false. What does that mean? Everybody keeps quoting this statement that the proof of loss would only act as a minimum. Was there the expectation that they could file a supplement? Correct. And then the problem became that that had to be filed within 60 days? Yeah. It would have been had to have filed 30 days prior to his statement that we could file one. Right. So it's sort of a non sequitur. Okay. And so what's the fourth act that went beyond negligence? Sorry. That we could address this with a claim for additional payment. Okay. So those are from your briefing. That's nothing new. Correct. Okay. All right. Correct. Mr. Goosby, you're taking up past your time. We'll give you a minute for rebuttal. Thank you. I appreciate that. Thank you, Mr. Chair. May it please the Court? My name is Patricia McHugh-Lambert, and I represent the appellees in this case, which are write-your-own companies participating in the National Flood Insurance Program 1968 as amended. Let me start by addressing some of the questions that this Court had. First, let me talk about the process. The process here did not involve an adjuster's report. If you look at the scheme that is set up in the regulations at 44 CFR and otherwise, that an adjuster report is something very different, and there's never been any proof, and it would be the appellant's burden to show that there was an adjuster's report. But it's essentially something that has to be signed and agreed to by an appellant. I don't have any of this in the record. Yes. And that's my point, Your Honor, is that there is nothing in the record. The only discussion and the only evidence in the record is the payment on the proof of loss, so that there is a record that establishes what — No, that's not quite right. There's also correspondence coming back from FEMA that seems to indicate that they've rejected something in this June 3rd letter. Something was rejected because that's what prompted, you know, plaintiff's lawyer's letter is what prompted FEMA to send out the engineer. And so that's why I struggle. And I understand that. It's a very complicated scheme in terms of the federal program. And so as it works out is that you file a — you fill out a proof of loss. And if it's after the 60-day time period, the WI insurance carrier cannot pay it unless it is in a waiver. Well, it's not that complicated. The problem is just that we've got holes in the factual record. The scheme doesn't seem very complicated. And they were allowed to file after 60 days. They had already had a waiver, right, and there wasn't any dispute about the May filing. Yes, Your Honor, that there was a waiver. It wasn't an extension. It was a waiver. Yes. And so that they have had the burden after a properly supported summary judgment motion, if they were going to say that there's something else, that they had to prove that they were entitled to it. But that's been their argument all along, ma'am, is that they filed and — they filed what they filed in May, and FEMA didn't — Nationwide didn't object to that filing. Whether we want to call it an extension or a waiver, that was deemed timely, that proof of loss. And then the question is, according to them, the representative from the defendant indicated that they would be allowed to supplement that, but they weren't. Well, the appeals process is what we're talking about, Your Honor. They did, in fact, file an appeal with FEMA. And at that point in time, that FEMA could look at and did, in fact, look at the additional evidence they presented. And at that point in time, FEMA would have had it within its authority to then decide to allow another proof of loss to have been filed and then pay it or not to pay it. The WIO carriers had no such authority. I understand the point. And I always understand that an appellate is always a desire for something a little bit more. But I think that here the issue that both parties have agreed to is that there was a — that the issue is whether or not equitable estoppel would be the basis for preventing the application of the 60-day proof of loss provision. I understand that. And that's why it's a very factually intensive inquiry. It has to be conduct that goes beyond negligence at a minimum under Wagner. That's what we're trying to get at. Well, I think there's issues even before you get to Wagner, Your Honor, that you have the appropriations clause issue and that there is a specific, under both Flick and the other cases that we have cited, that even before you get to that is whether or not there should be an appropriation clause analysis. And we believe that there would be. And if you look at Flick as well as the Cummings and Kidds and Dixon case as well as 44 CFR 6222, that the idea is that if there is a statutory scheme that is set forth about how things are to prevail, then this court has no authority or the lower court has no authority to go against that scheme. I fully appreciate that. And yet what you're telling us is that the appeals process was triggered and that FEMA would have had the authority, right? FEMA has the authority to do many things. They have the ability to waive and they would have the ability to waive the 60-day loss provision. There are certain things that they cannot waive under the scheme. That's why it would be really nice to know what was submitted to FEMA, what were they responding to when they denied something. And I don't think we have that. Right. And I would argue, Your Honor, that that is not relevant because it would have to show that not what FEMA, the issue is not what FEMA did or did not do, but whether or not whether there was a waiver. And the fact that there was only the waiver as to the $98,000, that is what the scheme entitles them to do, is to go if they didn't raise an issue or FEMA didn't do it, then that's the issue. And so we believe that you look at that. And I think that if you look at also kind of a separation of powers or administrative function issue, that you have the idea that if you've got a waiver scheme, if you've got a way that someone can get a waiver, and if you look at, I believe, 62.22, that it is the federal administrator that can waive certain things. And one of the things it can waive is that if there was, if somebody wants to bring to attention an issue relating to the adjuster or the WIO's conduct. And I can conceive of situations where FEMA may very well decide to allow a person to extend or file after the 60-day period because of that. And so if you look at the letter that is in the record, that there was no decision. What letter? Forgive me.  It's the letter that Mr. Goos wrote to FEMA. Okay. I've got that. Okay. And it doesn't discuss the adjuster's conduct. Now, he could have raised that as an issue. And so we would argue that there is. He absolutely raises the adjuster's conduct. That's what the estoppel is about. And it's Mr. Hickman. I'm not trying to be argumentative. I'm really just trying to get my arms around the facts. I understand, Your Honor. It is Mr. Hickman's declaration that says that he's got these attachments, and he represents what is required, either a proof of loss or from a report, a verified report from Mr. Valencia. And you see we don't have what Mr. Valencia submitted. That's all. And I think that the email that you're referring to, Your Honor, fairly read is documents from the insured has been sent. And that's not unusual in a claims process. People submit documents all the time. That's not what the email says. There's no evidence in the record that there was a verified adjuster's report that was submitted. I don't know what was submitted. But I understand Your Honor's points. Let me turn to the issue of equitable estoppel. Thank you. I think that if you even applied, this Court decided that equitable estoppel is still available in this jurisdiction. We would say that it's not available for a waiver of the 60-day provision. And there would be various reasons for that. First, we would say that under the appropriation clause, equitable estoppel cannot be used based upon FLIC and Merrill and Richmond. But even if you would or are going to be able to use it in something, this is not the appropriate case. There must be affirmative misconduct of a serious nature that would impose a requirement that would offend the concepts of decency. And that would be, I would cite the Heckler and the FLIC case. And mere error is not enough, and it's a heavy burden. And based upon the cases that we have cited, Phelps, Heckler, Wagner, and some of the others with RRT, merely telling somebody that I'm going to take care of it or the 60 days, that doesn't offend the sense of decency. Particularly because if you look at the policy provisions, which are at SER 13 and otherwise at SER 39, that the insured was on notice that there was that requirement. In fact, the letter from the adjuster that was sent to the insured on December 16th of 2015 indicated that it's your responsibility, use your judgment on that type of thing. So based upon that notice, it does not offend the concepts of decency. And here's his strongest argument, and it would be helpful to me if you could respond to his strongest argument, and that was that an additional claim could be filed later. I think that that is not an inaccurate statement, because through the waiver process, there is an ability to tell FEMA, and which is exactly what Mr. Goose did. He said, I want to file for more. And FEMA had the ability to do that. Now, whether it's called using the appeal process or what have you, that is the way to do it. So if you combine the two statements that, hey, FEMA is going to have to do anything further at this point, but you can look for additional information by filing something additional with FEMA, we believe that that statement is accurate. But even if it wasn't, it doesn't offend the sense of decency, because even the insured, if you look at the email, when they signed it, they knew that they were not getting paid for the basement. And so they could have said, adjuster, we're not going to do it. We're going to file our own proof of loss. But they signed something under oath that said this is our claim. And so we would argue that it doesn't offend the sense of decency. But this isn't what FEMA relied upon until it got to district court, right? This claim was denied based upon the determination about the basement. Well, you're asking whether or not it was about the basement, but it was also about the proof of loss. Forgive me. So my question is, did you raise this argument before you got to court? Well, I think it's implicitly issued because there's the issue of asking FEMA for a waiver for the first proof of loss. And so the WYO carrier explicitly asked FEMA for permission to pay the $98,000 proof of loss, which it did. But even if that wasn't the case, under the Phelps case and the Sands case, it doesn't matter when you waive it during the process. You can waive it in one case. In the Sands case, the attorney wrote and said, hey, are you relying on the 60-day provision? And they said, hey, I'm not. They only mentioned a different issue. And the court said it didn't matter that you raised that issue at the first instance in the court proceeding. Because I think that's appropriate because only the FEMA can waive that provision. So I'm just trying to get at his strongest argument. Is your position that Mr. Valencia was wrong when he said that an additional proof of loss could be filed or a supplemental proof of loss could be filed, or is it your position that he was right? Well, my position is that he didn't use the word proof of loss. He said claim. Okay, all right, fine, fine, supplement, whatever you want amended. But was he wrong or was he right? I think that the FEMA appeal procedure allows people to go and say, I want some additional money. So that means, ma'am, I'm just trying to get a yes or no. Is the answer he was right? If you look for, because you're trying to say it's not a proof of loss, there's no contention that it was proof of loss. You're just not answering my question, and it's really pivotal to my vote on this case. My son said it would be accurate to say, Your Honor, that if you go through the appeal process, that FEMA could decide to pay you additional money. So in that way, it would be accurate in that circumstance. But let me kind of, one of the other questions. So can I just follow that up? Certainly, Your Honor. So your position is it's not a basis for estoppel, this fourth argument, because even though he said they could file an additional or supplemental proof of loss, your position is they could have, but that wasn't raised until you got to court. That's not what the insurance company relied upon? No. My position is that this doesn't rise to the level of even offending the sense of decency so as to trigger estoppel. And one of the things that this Court also has to look at, and which we rely on, is whether or not this would have an adverse impact on the public, because in Flick and some of the other cases, that you cannot use equitable estoppel when it would have an adverse impact upon the public. Here, this is a very high bar in this type of case, and I fully appreciate that. So you don't have to convince me of that. I'm just trying to figure out whether or not they have an argument, even under the Wagner standard, that something this person said really misled them, was incorrect and misled them, and they could have relied upon it to their detriment. It's kind of hard, because at the time he made the statement about 60 days, 60 days had long since expired. Yes, Your Honor. And so you think he was right or wrong about, at that point, when he made the statement that they could have filed an additional loss? I think he was both accurate, if you look at the Federal scheme in terms of appeal, and it didn't matter, because at that time there could have been no reliance upon what he said because the 60 days had already passed. And, therefore, that, you know, and also that they followed the procedure about the additional amount, and FEMA ultimately decided to waive it. Not waive it. He only waived it as to the $98,000. And, therefore, if anything, that even if he said was inaccurate, there cannot be shown reasonable reliance or the types of character or that it would not have adverse. Just think, Your Honor. I've got 30 seconds left, but I just want to kind of say that I would like to ask you to think about the process. If an adjuster that is supplied as a courtesy, that insurers could say, someone orally told me that this is what has, and thereby defeat the 60-day provision, this finite procedure, the scheme set forth in the Federal legislation, would essentially be thrown out. There needs to be certainty and finality. So with that, I'd ask the Court to affirm the decision of the District Court. Thank you. Thank you, Your Honor. I'd just like to touch on a couple of matters. One, about the adjuster orally saying that, that is unrefuted. So they've had access to that adjuster. If he didn't agree with what he said, they had perfect access to them. We did recite in the stipulated facts, which is ER 75 with nationwide, what happened in the process with the appeal. And I would like to point out, because I think it's a little different from what my opponent has said, and that is the only issue that was at issue, for better term, during that appeal process was the basement. The insurance company denied on the basis of their belief that the lowest floor of the surf sand was a basement. They denied that. They told us we could appeal. We did. There's a second round of appeals that we also followed. The lack of a proof of loss did not come up at all during that time. At no point did they say, hey, this is all moot anyway because you didn't file a proof of loss. All we talked about was the basement issue, and it wasn't until we got in the middle of the summary judgment proceeding that they said, oh, by the way, it doesn't really matter what FEMA did in your appeal and what you did and what you said. You didn't file within the supplemental proof of loss, so you're out. So I think that's important to note. And the comment that we could have later filed something is completely contradictory to everything that they say in their pleadings. We have been dealing with arguments from the beginning that say you had 60 days and you didn't have the opportunity to file a supplemental proof of loss after that. So to now say that we had to. Did you ever file a supplemental proof of loss? No, because what the insurance company said to us was the path that you can follow is an appeal, which is what we did. And we continue to talk about the basement issue. And then this notion about you didn't file a proof of loss or it's too late, that was raised when? Summary judgment. So we wouldn't, of course, have brought up in a significant fashion Mr. Valencia's conduct during the appeal process because they hadn't raised that as a basis to deny our claim. You're just fighting about whether it was a basis. Correct. And I believe that is consistent with strict compliance. I mean, I think there is an argument that we did strictly comply. So even if this Court is still struggling with the Richmond decision and the appropriations issues, I think there is an argument that we did strictly comply because the policy says you can accept our denial. If we rule as you want us to rule, do we have to just ignore the fact that an insurance contract is a contract? No, I want you to follow the insurance contract. And what would be the result in this case on this record? A claim was made. Let me summarize this. A claim was made and it was immediately paid. Isn't that right? Partially paid. Correct. What do you mean partially paid? Didn't you make a claim for $98,000-plus and wasn't $98,000-plus immediately paid? That was what was included in the proof of loss. It is our position that all of the damages were submitted to Mr. Valencia, and that is contained in Mr. Stark's affidavit, which is in ER 189. All of the damages. So what are you saying, the $300,000-plus? Correct. That's correct. And I want to just point out that part of the reason that some things are ---- Did the $300,000-plus include the $98,000, or was it in addition to it? In addition to it. So far as you're concerned. Correct. So it's roughly $393,000. So you received a check for $98,000. Correct. Knowing that it was the insurance company's position that that was the total amount it was to pay. That's correct. And you cashed the check. Correct. And we appealed. They said here is ---- and this happens in most insurance cases, is that it's not an all-or-nothing proposition. So that was for the undisputed amount of damages that were not ---- there was no allegation or suggestion that that was basement-related. Would we have to rewrite the policy in order to ---- No. Why not? Because we followed the terms of the policy, meaning that the procedure set forth in the policy says accept our denial, file a supplemental proof, amended proof of loss, which we couldn't do because of the time, or exercise your rights under the policy, which is the appeal process. So we followed the process that, one, is in the policy, two, that the insurance company told us to follow. So I don't think you have to rewrite the policy at all. I think we have complied with the policy. And I think it was only years later that they said, oh, by the way, we have a gotcha, and you didn't file a proof of loss. Thank you, Mr. Goosey. Thank you. We've passed your time. The case of Surf Sand Resort versus Nationwide Mutual Fire Insurance Company is submitted, and we thank counsel for their argument.
judges: Farris, Bea, Christen